ROCKLIFFE BROTHERS CO., INC.

vs.

MAYFLOWER SALES CO., INC.

Superior Court      Hartford County      File #52236

Present:   Hon. ALFRED C. BALDWIN, Judge.

E. A. Mag,             Attorney for the Plaintiff.

Buckley, Creedon & Danaher, Attorneys for the Defendant.

**MEMORANDUM FILED JULY 1, 1936.**

BALDWIN, J.   The plaintiff is a distributor of Kelvinators having a territory within which it may sell and deliver Kelvinators for installation, which territory is limited. It includes most of this State and four counties in the State of Massachusetts. This limited territory and the rights of sales and distribution therein are defined in a contract between the plaintiff and Kelvinator Sales Corporation of Detroit, Michigan, this corporation being the corporation having control of the sales and distribution of Kelvinators.

This contract (Exhibits A and A-1) provides (Exhibit A), among other things, as follows:

"Distributor agrees that merchandise sold him by Corporation (Kelvinator Sales Corporation) will not be resold outside of distributor's territory unless the distributor first obtains permission of the distributor in whose territory the installation is to be made, and makes an agreement with such distributor to compensate him, in accord-

ance with one of the two following plans:"

and then follows a description of two plans, one providing for compensation to the distributor in whose territory plaintiff may sell, install and service Kelvinators and the other providing compensation to the distributor in whose territory plaintiff may sell, but such distributor shall install and service Kelvinators.

Kelvinator Sales Corporation, under its contract, exercises certain supervision over and requires certain obligations from its distributors and reserves certain rights. The contract may be terminated by either party, upon certain notice, with or without cause.

The rights of sale and distribution thereunder are very valuable rights to this distributor, the plaintiff, since they are exclusive rights in its territory.

On or about January 29, 1935, the defendant, acting by one Francis, its president and manager, ordered from the plaintiff eighty-six Kelvinators and represented that these Kelvinators were to be installed in apartment houses in Hartford, giving to the plaintiff streets and numbers thereon where such apartment houses were represented to be located.

A distributor may sell Kelvinators for installation in an apartment house at a price less than he may sell to a retail merchant or to a retail dealer in Kelvinators, and sales for installation in an apartment house in lots are not permitted by retail dealers but may be made by distributors.

At the time this order was given plaintiff inquired of defendant if it was certain these Kelvinators were to be installed in apartment houses within its territory, and stated that R. H. Macy & Co. of New York was procuring through bootlegging methods, Kelvinators for sale to its trade and should any of this merchandise go out of plaintiff's territory his contract as distributor would be in jeopardy. Francis, who was acting for the defendant, had formerly been an officer of a corporation which was a distributor of Kelvinators under a contract somewhat similar with respect to territory, and had general knowledge of restrictions, rights and obligations in relation thereto, assured plaintiff that these Kelvinators were to go into apartment houses in Hartford, to be installed by the party to whom he was selling and that he, Francis, had

installed other appliances in these apartment houses and that the Kelvinators would not be sold for resale outside of plaintiff's territory.

On or about March 5, 1935, defendant gave plaintiff an order for eighty Kelvinators. These were represented to plaintiff to be installed in apartment houses in New Haven, and when plaintiff inquired to make sure that they were to be installed in apartment houses in New Haven, defendant assured plaintiff of that fact and offered to give plaintiff the names of the streets and numbers thereon of the location of such apartment houses.

Each Kelvinator bears a model number and a serial number and Kelvinator Sales Corporation keeps a record of the sale and shipment of each Kelvinator. With each Kelvinator is a card which is separable into three parts or cards, each of which bears the number of the Kelvinator it accompanies and blank spaces are provided thereon for the purpose of recording on each identical information for filing purposes. One of these cards is to be sent to Kelvinator Sales Corporation, one to the distributor and the other retained by the dealer if sold by a dealer.

Included in the information to be recorded on such cards, is the name of the distributor, the name of the party by whom installed, the name of the party for whom installed, date purchased, date installed and other information intended to describe the Kelvinator and its condition. When blank spaces on the cards have been filled in and the cards returned as intended, Kelvinator Sales Corporation has a complete record of the original places of installation of the Kelvinators which such cards came from.

Shipment of these Kelvinators was made in two carload lots by Kelvinator Sales Corporation to plaintiff, the first to Hartford and the other to New Haven, each car being sealed when shipped from Detroit. Each shipment was accompanied by bill of lading with draft attached. Upon receipt of information of the arrival of the cars and bills of lading plaintiff advised that the drafts would be taken up with funds at a bank named in Hartford.

It appeared upon the trial that the funds provided for payment of these shipments came from a bank in New York.

Upon delivery of these bills of lading to the defendant it

resold and delivered the bills of lading and the Kelvinators represented thereby to one H. L. Seltzer who claimed to be owner of apartment houses in Hartford.

The cars containing these shipments were received in Hartford and New Haven, respectively, with their seals intact and from the records of the Railroad Company it appears that they were each reshipped from such destinations, with seals intact, consigned to Harold Lavine in care of S. Klein, Degnan Terminal, Long Island Railroad, Long Island City, N. Y., and went onto Macy's siding.

Subsequently Kelvinator Sales Corporation received complaints from its New York distributor that R. H. Macy Company, who was not an authorized dealer in Kelvinators, was selling Kelvinators in competition with authorized dealers and at a price under which authorized dealers could sell, whereupon Kelvinator Sales Corporation investigated the situation and found that the Kelvinators included in both shipments to plaintiff had been diverted from plaintiff's territory, and with other Kelvinators shipped by it to Providence, Rhode Island, were owned by and in possession of R. H. Macy Company in New York and were there being offered for sale to the public.

These Kelvinators were resold by plaintiff, as a result of which they were diverted for installation outside of its territory in violation of its agreement with Kelvinator Sales Corporation.

Kelvinator Sales Corporation, in order to keep faith under its contract with its New York distributor, purchased from the Macy Company all Kelvinators which had been diverted from the Connecticut and Rhode Island territory and then resold them to its New York distributor at the established distributor's price, entailing a loss by the transaction. It apportioned this loss to plaintiff resulting from the diversion of the Kelvinators it had sold plaintiff and required plaintiff to assume such proportion of such loss, a part of which plaintiff has paid and Kelvinator Sales Corporation holds plaintiff's notes for the balance, which notes plaintiff is paying as they fall due.

This proportion of loss is smaller in amount than plaintiff would suffer had the Kelvinators been resold for installation outside of plaintiff's territory under either plan provided for

under its contract with Kelvinator Sales Corporation. In order to retain its contract as distributor plaintiff was required to assume and pay such loss.

Plaintiff made repeated efforts to get from Francis, manager of the defendant company, the cards hereinbefore described, who on occasions advised that the man who had installed the Kelvinators had not filled them out, but that they would be secured and returned to plaintiff. It appears that Francis was trying to get such cards from Seltzer to whom he had resold, without results, and which, of course, under the circumstances could not be secured.

Admissible evidence, as it appears to me, supported these facts, and, in my view, the charge conformed with the law.

The jury returned a verdict for plaintiff on the count based upon violation of contract and for the defendant upon the count based upon fraud. The evidence, it appeared to me, to abundantly support the verdict for the plaintiff. Had it been for the plaintiff upon both counts it would also have had sufficient support.

The motion to set aside the verdict is therefore denied.